## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

JOHN RANDOLPH DUPREE, SR.,              :
                                                          :
        Plaintiff,              :
                                                          :
    v.                                      :          Civ. No. 10-351-LPS
                                                          :
JANE DOE 1, et al.,                     :
                                                          :
        Defendants.             :

---

John Randolph DuPree, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

Chad J. Toms and Daniel A. Griffith, Esquires, Whiteford, Taylor & Preston, L.L.C., Wilmington, Delaware.  Counsel for Defendant Correctional Medical Services, Inc., now known as Corizon, Inc.

## <u>MEMORANDUM OPINION</u>

February 10, 2014
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff John Randolph DuPree, Sr. ("Plaintiff"), an inmate at the James T. Vaughn

Correctional Center ("VCC") in Smyrna, Delaware, filed this action on April 27, 2010, alleging

constitutional violations pursuant to 42 U.S.C. § 1983. Presently before the Court are Plaintiff's

motion to join all parties and to amend the complaint (D.I. 79), motion to have witnesses

subpoened (D.I. 88), motion for discovery (D.I. 89), and motion for summary judgment[1] (D.I.

95). Also before the Court is Defendant Correctional Medical Services, Inc.'s ("CMS")[2] motion

for summary judgment. (D.I. 92) For the reasons that follow, the Court will deny the motions.

## II. BACKGROUND

Plaintiff presses a medical needs claim as a result of a skin condition that he alleges

caused scarring and hospitalization. He was hospitalized in May 2009 "from nearly losing" his

life as a "direct result from the neglect in medical treatment." (D.I. 2) At that time, he

underwent "operations to remove the highly infectious mass" from his chest and neck. (*Id.*)

Plaintiff alleges that CMS' policies/customs of cost avoidance were the driving force behind the

indifference to his serious medical needs. (D.I. 7 at 3) In addition, he alleges that CMS provided

the least efficacious medical care for the purpose of saving money. (D.I. 16 at ¶¶ 2, 4) Plaintiff

---

[1]This motion is docketed as a motion to reinstate, but the pending motions report for the case identifies the motion as a motion for reconsideration. (*See* D.I. 95) Plaintiff's motion seeks to reinstate a motion for summary judgment (D.I. 49) that was denied without prejudice as premature on March 29, 2013 (D.I. 78). The Court considers the pending motion to be a motion for summary judgment.

[2]Now known as Corizon, Inc.

1

seeks treatment by a dermatologist, prospective relief, declaratory relief, reimbursement for the preexisting medical condition, and compensatory and punitive damages.

Plaintiff has been housed at the VCC since the fall of 2006. (D.I. 13 Ex. A at 11)  He has a skin condition that has been diagnosed as dermatitis, eczema, psoriasis, or lichen simplex.[3]  (*Id.* at 16, 17, 60, 61)  Treatment includes the use of ointment such as triamcinolone cream[4] and oral antibiotics.  (*Id.* at 13-23)

On September 4, 2006, Plaintiff was advised that a grievance he had submitted had been sent to the medical department for processing.  (D.I. 100 Ex. 4)  Plaintiff submitted a grievance on September 25, 2006, complaining that he had been seen by a physician in late August or early September and was prescribed an antibiotic and cream to treat rashes on his skin.  (D.I. 94 Ex. A at Ex. 4)  Plaintiff complained that it was the third time he had seen a physician and that he had received the antibiotic, but not the cream.  (*Id.*)  Investigation of the grievance indicated that Plaintiff was transferred to the VCC on November 22, 2006.  (*Id.*)  As of February 9, 2007, the grievance was resolved, with an indication that "this grievance from prior institution is now resolved per inmate. Inmate received drops for this condition according to inmate."  (*Id.*)

On November 30, 2006, Plaintiff submitted a sick call slip advising that he was recently transferred to the VCC and asking for his prescription cream medication.  (D.I. 100 Ex. 15)  The slip indicates that Plaintiff was scheduled for an allergy evaluation, that the medication had been

---

[3]Lichen simplex is a skin condition characterized by small, intensely pruritic papules. *See The American Heritage Stedman's Medical Dictionary* 460 (2d ed. 2004).

[4]Triamcinolone acetonide cream is a topical corticosteroid that constitutes a class of primarily synthetic steroids used as anti-inflammatory and antipruritic agents. *See* http://www.rxlist.com/triamcinolone-cream-drug.htm.

ordered on October 3, 2006, and that it was good until January 31, 2007.[5]  (*Id.*)  On December 11, 2006, Plaintiff submitted a grievance complaining that he was not receiving prescribed medications and that his sick call requests were being ignored subsequent to his transfer to the VCC.  (D.I. 100 Ex. 6)  Plaintiff was provided the cream on December 29, 2006 and placed on the "doctor's line for reeval of skin problem."  (*Id.* at Ex. 10)  It was recommended that Plaintiff put in a request for the medication seven to ten days before running out.  (*Id.*)

On March 26, 2007, Plaintiff submitted a sick call slip complaining of an unresolved issue of break-outs across his entire body, and noting that he had asked to be re-seen on numerous sick call requests.  (D.I. 100 Ex. 7)  The slip states, "scheduled [with] MD/MLP." (*Id.*)  Plaintiff submitted a sick call slip on September 30, 2007, stating that he needed his medications renewed and refilled.  (*Id.* at Ex. 13)  He was referred to a physician for a follow-up. (*Id.*)  On October 16, 2007, Plaintiff submitted a grievance complaining that he had placed a sick call slip in the early part of October and two weeks later he had yet to be called to be seen or to pick up his medications.  (*Id.* at Ex. 11)

Plaintiff submitted a sick call slip on January 11, 2008, stating that his medications had run out or nearly run out.  (D.I. 100 Ex. 16)  An appointment was scheduled for January 15, 2008.  (*Id.*)  On March 26, 2008, Plaintiff submitted a grievance complaining that he had submitted a sick call slip that his medication was about to run out, that it was returned stating "there was to be a scheduled appointment made," that he has been out of medication for two months, his condition has worsened, and he had yet to be seen.  (D.I. 100 Ex. 2)  An investigation ensued on May 8, 2008 regarding the medication issue, noting "medications rec'd."  (*Id.* at Ex. 3)

---

[5]The year is written as 2006, but that appears to be a mistake.

On December 31, 2008, Plaintiff submitted a sick call slip for cream and was told that the medication had been ordered. (D.I. 94 Ex. A at Ex. 5)

Plaintiff was hospitalized for two weeks in April 2009 on an emergent basis. (D.I. 13 Ex. A at 37-40) He testified that his hospitalization and surgery for cellulitis was the direct result of not receiving the prescribed creams at the VCC. (D.I. 94 Ex. A at 39) The physicians at Kent General Hospital discovered the cellulitis. (*Id.* at 42) Plaintiff testified that no one at the VCC knew of his cellulitis because it did not present in a normal way. (*Id.* at 42)

According to Plaintiff, CMS maintains a corporate policy of failing to provide certain prescription medication, or delaying delivery of medication, for the purpose of cost savings. (*Id.* at 30-32) Plaintiff testified there were many delays in getting medication to him and that he was not getting his medication he needed. (*Id.* at 20, 28) Plaintiff was allowed to keep the medication on his person ("KOP") and a tube would probably last a week.[6] (D.I. 94 Ex. A at 22) Prescriptions typically were written for ninety days and, if the inmate did nothing, the prescription would lapse. (*Id.* at 26) When the medication ran low or was about to lapse, Plaintiff would submit a sick call slip to request renewal. (*Id.* at 66) Plaintiff testified that the medication should have been automatically reordered, but it was not. (*Id.* at 14) When he would ask for a reorder, it could take up to three months to get the medication. (*Id.* at 14) Plaintiff also testified that his physician would order the medication, but he would not receive it. (*Id.* at 32) When asked to identify the corporate policy that he believed violated his constitutional claims,

---

[6]An August 2008 medication administration record indicates that Plaintiff's prescription for Triamcinolone was for a 60-day period, with an order date of July 1, 2008 and a stop date of September 13, 2008, while a prescription for Theraderm lotion was for a 120-day period, with an order date of April 21, 2008 and a stop date of September 13, 2008. (D.I. 94 Ex. B)

Plaintiff responded that his testimony regarding delay in receipt of medication was proof of the policy. (*Id.* at 44-46) Plaintiff testified that he believed there was a corporate policy, custom, or practice of placing cost containment ahead of medical care and that this policy somehow dictated medical providers delaying care and delaying dispensing of medication. (*Id.* at 32-33, 44, 51) Plaintiff has not seen any written document or policy, but asserts he can show the policy through CMS' history. (*Id.* at 32-33, 46)

Plaintiff testified that his current treatment is more consistent and marked by fewer interruptions. (*Id.* at 18) At the time of his deposition, Plaintiff's symptoms were being treated. (*Id.* at 61)

## III.   **MOTION TO AMEND**

On March 29, 2013, the Court ordered Plaintiff to show cause on or before April 30, 2013, why Defendants Jane Doe 1, Jane Doe 2, Jane Doe 3, and First Medical Services ("FMS") should not be dismissed for failure to identify the Doe Defendants and failure to serve process upon the Doe Defendants and FMS pursuant to Fed. R. Civ. P. 4(m). (D.I. 78) Plaintiff responded on April 30, 2013 by filing a motion to join all parties and to amend the complaint. (D.I. 79) It seems from the motion that Plaintiff seeks to gain service upon unserved defendants and to subpoena individuals to obtain their testimony. To the extent that Plaintiff seeks to amend, he failed to comply with Local Rule 15.1, which requires providing a copy of the proposed amended pleading. Nor does the motion set forth the substance of the proposed amendment. The Court will decline to grant Plaintiff leave to amend pursuant to Fed. R. Civ. P. 15(a).

On November 13, 2013, the Court entered a second order for Plaintiff to show cause on

5

or before December 13, 2013, why Defendants Jane Doe 1, Jane Doe 2, Jane Doe 3, and FMS should not be dismissed for failure to identify the Doe Defendants and to serve process each of the foregoing defendants pursuant to Fed. R. Civ. P. 4(m).  (D.I. 97)  On the same date, the Court ordered CMS to provide the Court the last known addresses of unserved Defendants Dr. Oketokun ("Dr. Oketokun") and Nurse Ihuoma Chucks ("Chucks").  (D.I. 98)  The addresses for Dr. Oketokun and Chucks have been provided and a service packet was forwarded to the United States Marshals Service on December 26, 2013.  To date, they have not been served.

In the meantime, on December 2, 2013, Plaintiff responded to the second Show Cause Order by asking the Court to allow him more time to pursue the Doe Defendants.  (D.I. 103) Plaintiff indicates that in his review of medical records, he is unable to discern the signatures and writing of medical personnel to identify the Doe Defendants.  Plaintiff filed his complaint in April 2010.  He has had ample opportunity to identify the Doe Defendants.  Accordingly, the Court finds that Plaintiff has failed to show cause why the Doe Defendants should not be dismissed for failure to identify and serve them pursuant to Fed. R. Civ. P. 4(m).

With regard to FMS, Plaintiff indicates that it is a defunct operation and that he intends to move to amend to substitute the State of Delaware as a defendant in its place.  Plaintiff may not substitute the State of Delaware for FMS, as it is immune.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54  (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974).

Based upon the foregoing, the Court will deny the motion to amend/correct complaint (D.I. 79) and will dismiss the Doe Defendants and FMS for Plaintiff's failure to show cause.

## IV.    **DISCOVERY MOTIONS**

The Court entered a scheduling Order on March 29, 2013.  (D.I. 78)  The Order provided

for all discovery in the case to be initiated so that it would be completed on or before September

30, 2013.  On September 11, 2013, Plaintiff filed a motion to have witnesses subpoenaed.  (D.I.

88)  Plaintiff seeks the issuance of subpoenas for three non-parties and for Chucks and Dr.

Oketokun.  On September 17, 2013, Plaintiff filed a motion for discovery of all information

pertinent to the operations of CMS.  (D.I. 89)  CMS opposes the motions on the grounds that

they are untimely, Plaintiff improperly seeks to subpoena parties, and the requests are nearly

identical to prior discovery requests to which CMS has previously responded.  (D.I. 90)

With regard the motion to issue subpoenas, an inmate proceeding *in forma pauperis* in a

civil action may not issue subpoenas without paying the required fees.  *See Pedraza v. Jones*, 71

F.3d 194, 196 n.4 (5th Cir. 1995); *Fernandez v. Kash N' Karry Food Stores, Inc.*, 136 F.R.D.

495, 496 (M.D. Fla. 1991) (witness and mileage fees required to be paid by indigent plaintiff).

Here, Plaintiff proceeds *in forma pauperis* and there is no indication that he has the ability to pay

the fees associated with issuance of a subpoena.  In addition, Plaintiff seeks to subpoena

defendants Dr. Oketokun and Chucks.  It is not necessary for Plaintiff to subpoena these two

defendants as he has the means of discovery on parties through the Federal Rules of Civil

Procedure once they have been served.[7]  Therefore, the Court will deny the motion to have

witnesses subpoenaed.  The Court will also deny the motion for issuance of subpoenas upon non-

parties, but will reconsider the issue upon Plaintiff's showing that he has the ability to pay the

_____

[7]The Court will enter an amended scheduling order once Defendants Dr. Oketokun and
Chucks are served.

required fees.

The Court has reviewed Plaintiff's motion for discovery (D.I. 89) as well as Plaintiff's prior discovery requests (D.I. 71, 72) and CMS' responses (D.I. 73, 74), and notes that many of Plaintiff's requests are duplicative. CMS responded to the initial discovery requests, and the Court finds that it adequately responded to them. Finally, Plaintiff belatedly filed the instant motion such that CMS could not respond to the requests prior to the discovery deadline, and therefore, even were the requests not duplicative, they are untimely. For these reasons, the Court will deny the motion for discovery.

## V.    **MOTION FOR SUMMARY JUDGMENT**

The Court's Scheduling Order (D.I. 78) entered on March 29, 2013 set October 31, 2013 as the deadline for filing dispositive motions. CMS moves for summary judgment on the grounds that Plaintiff failed to: (1) develop any evidence to establish a violation of his constitutional rights as a result of medical care he received; (2) obtain expert testimony to support his theory that limited access to anti-itch skin cream resulted in a serious injury or illness; or (3) establish that an existing custom, policy or practice of CMS resulted in the violation of a constitutional right. (D.I. 92, 39) Plaintiff opposes CMS' motion for summary judgment arguing that: (1) CMS' recitation of the facts is misleading; (2) CMS and its staff ignored prescribing doctors' orders; (3) CMS failed to provide him with discovery; (4) the pattern of medication interruption and refusing to correct the interruption violates the constitution; (5) his primary complaint is the lack of treatment by the medical department; (6) he can be considered an expert on his medical condition given the number of years he has been dealing with the matter; (7) this case is about Plaintiff not receiving adequate or appropriate

8

treatment at the hands of CMS' staff and under its policy; and (8) Plaintiff's testimony, along with his medical file, shows a pattern of abuse, neglect and fraud, sufficient to establish an existing custom, policy, or practice that resulted in constitutional violations.[8]  (*See* D.I. 100)

Plaintiff filed a renewed motion for summary judgment on November 5, 2013.  (D.I. 49, 95)  He moves for summary judgment on the ground that there is no genuine issue as to any material fact, and that he is entitled to judgment as a matter of law.  (D.I. 49)  In support of his motion Plaintiff refers to the record, "including the amended complaint, the answer to it, and Plaintiff's . . . affidavit."  (D.I. 49)  CMS opposes the motion.  (D.I. 96)  CMS interprets the motion as a motion for reconsideration and argues that Plaintiff has not established the grounds for reconsideration.  In addition, CMS argues that: (1) Plaintiff failed to file a motion for summary judgment in a timely manner;[9] (2) Plaintiff failed to support his motion for summary judgment as required by Fed. R. Civ. P. 56(c)(1)(A); (3) the reinstated motion for summary judgment does not identify any admissions made by CMS or any written discovery responses that support Plaintiff's theory of the case; and (4) Plaintiff did not submit a valid affidavit supporting his claims.

---

[8]The Court was not provided with copies of Plaintiff's medical records which he describes as "4-Volumes" and as having been produced to CMS.  (*See* D.I. 100 at 3, 5)

[9]Plaintiff's motion for summary judgment is post-marked November 1, 2013, and was filed on November 6, 2013.  The motion is not dated.  The computation of time for complaints filed by pro se inmates is determined according to the "mailbox rule," by which a complaint is deemed filed as of the date it was delivered to prison officials for mailing to the court. *See Houston v. Lack*, 487 U.S. 266 (1988); *Burns v. Morton*, 134 F.3d 109, 112 (3d Cir. 1998); *Gibbs v. Decker*, 234 F. Supp. 2d 458, 463 (D. Del. 2002).  Because it is unclear when Plaintiff delivered the motion to prison officials, the Court, giving Plaintiff the benefit of the doubt, considers it delivered on October 31, 2013, the deadline for filing motions for summary judgment.

### A.    Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### B.    Discussion

When the Court screened the case, it considered Plaintiff's Complaint as raising the following issues: (1) CMS' policies/customs of cost avoidance were the driving force behind the indifference to Plaintiff's serious medical needs; and (2) CMS provided the least efficacious medical care for the purpose of saving money. Plaintiff now states that this case is about not

receiving adequate or appropriate treatment at the hands of CMS' staff and under its policy. CMS frames Plaintiff's claim as the sporadic access to, or delay in receiving, renewed quantities of anti-itch cream allegedly resulting in a life threatening bout of cellulitis. (*See* D.I. 93 at 15)

Plaintiff did not support his renewed motion when he failed to cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact" as is required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56(c)(1)(A) & (B). "[T]he court is not obliged to scour the record to find evidence that will support a party's claims." *Perkins v. City of Elizabeth*, 412 F. App'x 554, 555 (3d Cir. Feb. 11, 2011); *see also Holland v. New Jersey Dep't of Corr.*, 246 F.3d 267, 285 (3d Cir. 2001). Therefore, the Court will deny Plaintiff's motion for summary judgment.

### 1. **Medical Needs**

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *See id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *See Farmer v. Brennan*, 511 U.S. 825, 837

(1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05; *see also Monmouth Cnty. Corr. v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (deliberate indifference can be shown when medical treatment is delayed for non-medical reasons).

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. Apr. 12, 2010) (internal quotation marks omitted). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *See Estelle*, 429 U.S. at 107. Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

## 2.   **Expert Testimony**

CMS contends that summary judgment is appropriate because Plaintiff failed to present expert testimony to support his theory that limited access to skin cream resulted in a serious injury or illness. Plaintiff responds that every document in his medical file was placed there by a medical professional and that he can be considered an expert witness based upon the number of years that he has been dealing with his condition.

"Where the jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts, the jury itself is allowed to supply the applicable standard of care and thus to obviate the necessity for expert testimony relative thereto." *Natale v.*

*Camden Cnty. Correc. Facility*, 318 F.3d 575, 579 (3d Cir. 2003). While Plaintiff has not identified an expert witness, he has moved to subpoena certain treating physicians at Kent General Hospital (D.I. 88), and Chucks and Dr. Oketokun – who have yet to be served – are also medical personnel. It may be that these individuals could serve as fact witnesses sufficient to support Plaintiff's claim even without an expert witness.

Accordingly, at this juncture, the Court will deny CMS' motion for summary judgment due to a lack of expert testimony.

### 3.   Policy, Custom, Practice

When a plaintiff relies upon a theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *See Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that CMS is directly liable for the alleged constitutional violations, Plaintiff "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale*, 318 F.3d at 584 (because respondeat superior or vicarious liability cannot be basis for liability under 42 U.S.C. § 1983, a corporation under contract with a state cannot be held liable for the acts of its employees and agents under those theories).

Assuming the acts of an entity's employee have violated a person's constitutional rights, those acts may be deemed the result of a policy or custom of the entity for whom the employee works, thereby rendering the entity liable under § 1983, where the inadequacy of existing practice is so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been deliberately indifferent to the need. *See Natale*, 318 F.3d at 584. "'Policy is

made when a decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict.'" *Miller v. Corr. Med. Sys., Inc.*, 802 F. Supp. at 1132 (alteration in original) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews*, 895 F.2d at 1480; *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989)).

The evidence of record indicates that, in the past, Plaintiff had difficulty obtaining his medication in a timely manner. Plaintiff attributes this delay to a policy or custom of CMS. During his deposition, Plaintiff testified that when he asked for a reorder of the medication, it could take up to three months to get it. He testified that his physician would order the medication, but Plaintiff would not receive it. Plaintiff could not identify the corporate policy that he believed violated his constitution claims. His position is that his testimony regarding delay in receipt of medication is proof of the policy.

In viewing the evidence of record it is evident that there were delays in Plaintiff's receipt of medication. The evidence of record does not indicate what caused the delay – be it delay in ordering by medical personnel, delay in ordering because the prescription was for a certain time-frame (i.e. a two or three month period) and Plaintiff used the medication within one week's time, delay by the manufacturer or distributor of the medication, delay due to cost considerations, or delay based upon something else. Nonetheless, the evidence of record refers to numerous

14

instances on which Plaintiff complained of delay in receiving required medication sufficient to

show some pattern of conduct that could establish a custom or policy.[10]

CMS provides no explanation for the numerous delays in providing Plaintiff medication,

but rests upon its position that Plaintiff only claims that he was not given creams in the volume

and frequency he desired. As noted above, there may be a constitutional violation under the

deliberate indifference standard when medical care is delayed for non-medical reasons. Here, the

record is silent as to the reason for the delay. Yet there is evidence in the record that CMS knew

of the medication issues as a result of Plaintiff's numerous grievances and requests for

medication attention. An inference can reasonably be drawn that CMS knew that delay in

providing needed medication could create a serious risk of harm. Under these circumstances,

there is an issue of fact as to whether policymakers at CMS knew of Plaintiff's medical need but

delayed in responding to it. Therefore, at this juncture, the Court will deny CMS' motion for

summary judgment.

## VI.   <u>CONCLUSION</u>

For the above reasons, the Court will deny all pending motions. (D.I. 79, 88, 89, 92, 95)

The Court is mindful that two medical defendants have not yet been served. In the event Chucks

and Dr. Oketokun are served, the Court will reopen discovery and will consider renewed motions

for summary judgment by all parties.

An appropriate Order follows.

---

[10]It is well settled that a single incident of unconstitutional behavior, without any direct involvement by a municipal policy maker, is not sufficient to impose liability. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *City of Oklahoma v. Tuttle*, 471 U.S. 808, 822 (1985); *Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir.1995). Here, Plaintiff refers to several instances of delay in receiving medication.